IRONS, Ex'r, etc., and others *v.* MANUFACTURERS' NAT. BANK OF CHICAGO and others.

*(Circuit Court, N. D. Illinois. 1883.)*

1. NATIONAL BANKS—INDIVIDUAL LIABILITY OF STOCKHOLDERS—ACT OF JUNE 30, 1876.
   The bill contemplated by the second section of the act of June 30, 1876, to enforce the individual liability of stockholders in a national banking association that has gone into liquidation, need not purport expressly on its face to be filed by the complainant on behalf of himself and all other creditors, for the law would give it that effect and the court would so treat it; but, if this was necessary, the bill might be amended in that respect by leave of the court.

2. SAME—CREDITOR'S BILL—OBTAINING PRIORITY.
   The manifest intention of the national banking act is a distribution of its assets, in case a bank becomes insolvent, equally among all the unsecured creditors; and the diligence of a creditor who files a creditor's bill can give him no greater rights than are given any other creditor to share in the distribution of the assets, and a prayer in the bill that such creditor be given priority over other creditors will not be granted.

3. SAME—AMENDED BILL—MULTIFARIOUSNESS.
   Where the original bill filed before the passage of the act of June 30, 1876, was amended after the passage of that act so as to make the individual shareholders defendants, and subject them to liability, such bill will not be considered on that account multifarious.

4. SAME—EFFECT OF ACT OF JUNE 30, 1876.
   The act of June 30, 1876, did not create any new liability on the part of the stockholders, or provide for enforcing such liability against them under circum-

stances where it could have not been enforced before that act was passed. This act is not retroactive, and does not create rights which did not exist prior to its passage, as against existing stockholders, though it may be construed as limiting the tribunal in which proceedings are to be instituted for enforcing the stockholder's liability to a United States court, instead of allowing creditors to resort to any competent tribunal with equity power.

5. SAME—ORDER CONFESSING PLEA OF BANKRUPTCY.

Entering an order that "the complainants confessing the pleas of bankruptcy of defendants, it is ordered that this case be stayed as to them," does not amount to a final decree, but simply confesses the facts set up in the plea, leaving the court to adjudge the law upon such facts whenever the main cause is heard.

6. SAME—BANKRUPTCY OF STOCKHOLDER A BAR.

Where the original bill was filed February 3, 1875, before the passage of the act of June 30, 1876, and a receiver was appointed February 26, 1875, thereunder, and an amended bill, making the individual stockholders defendants, was filed October 5, 1876, and after the filing of the amended bill certain of the defendants were adjudged bankrupts, their pleas of bankruptcy will constitute a sufficient bar in their behalf.

7. SAME—EVIDENCE OF NUMBER OF SHARES OWNED.

Where it is admitted by the defendants that they were shareholders in a national bank, but the number of shares respectively held by them is not admitted, the names of the shareholders and the number of shares held by each, as shown by the stock ledger, and stubs of the stock certificates, and the dividend sheets of the bank on which they respectively drew the last dividends, will be *prima facie* proof of the number of shares held, and, unless rebutted, sufficient.

8. SAME—TRANSFER OF SHARES AFTER FAILURE OF BANK.

After a national bank has become insolvent and has closed its doors for business, its shareholders' liability to creditors is so far fixed that any transfer of their shares must be held fraudulent and inoperative as against the creditors of the bank.

BLODGETT, J.   The original bill in this case was filed by James Irons, a judgment creditor of the Manufacturers' National Bank, in February, 1875.   It was in the usual form of a creditor's bill, alleging recovery of a judgment against the bank, issue of execution, and return of "no property."   It charged that the bank had suspended payment and gone into liquidation by a vote of its stockholders; that the comptroller of the currency had refused to appoint a receiver; that it had equitable assets, which were not subject to execution; and that such assets were being misapplied by its officers.   It was also alleged in the bill that the capital stock of the bank was $500,000, and a list of the stockholders, and the number of shares held by each, was set out in the bill.   The bill asked for the appointment of a receiver to take possession of the assets and wind up the affairs of the bank.   A receiver was appointed, to whom the officers of the bank were directed to turn over the assets, and the receiver so appointed accepted the trust and entered on the discharge of his duty.   The stockholders were not made parties to this bill, and no order was made directing the receiver to take any steps for the enforcement of the liability of the stockholders; and it was at this time insisted that the stockholders' liability could only be enforced through the medium of a receiver appointed by the comptroller of the currency.   On the thirtieth of June, 1876, congress, by the second section of "An act authorizing the appointment of receivers of national banks, and for other purposes,"

provided that "when any national banking association shall have gone into liquidation under the provisions of section 5220, Rev. St., the individual liability of the shareholders, provided for by section 5151 of said statutes, may be enforced by any creditor of such association by a bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself, and all other creditors of the association, against the shareholders thereof, in any court of the United States, having original jurisdiction in equity, for the district in which such association may have been located or established." On October 5, 1876, by leave of court, complainant filed an amended bill·charging the recovery of the judgment at law mentioned in the original bill, issue of execution, and a return of "no property;" that said judgment was still wholly unpaid; that said bank suspended payment on or about September 22, 1873, and soon thereafter had gone into voluntary liquidation; that no receiver of the bank had ever been appointed by the comptroller of the currency; alleging the names of the several stockholders of the bank, and the amount of stock held by each, making such stockholders parties defendant to the bill; alleging fraudulent dealings in regard to their stock between some of the stockholders and the bank and its officers; and praying that such frandulent transfers of stock be set aside; that said stockholders, now made defendants, as should be found liable to complainant and the other creditors of the bank, upon their stock liability as created by the national banking act, should be decreed to pay whatever amount should be found due from them and each of them, respectively, into court, or to the receiver; and that out of such fund complainant might be paid in full, and the balance distributed among the other creditors of the bank. Most of the stockholders thus brought into court have appeared and answered, setting up various defenses, some special to the particular case of the defendants so especially answering, and all insisting upon certain general and common grounds of defense. These general grounds of defense are:

*First.* That the bill, as amended, does not purport to be filed in behalf of complainant and all other creditors, within the technical language of the second section of the act of June 30, 1876. The language of this section is that the individual liability of stockholders of national banks "may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and all other creditors of the association against the shareholders thereof." Neither the original nor the amended bill, upon their face, expressly purport to be brought by complainant in behalf of himself and all other creditors of the association, although, by the prayer, complainant asks that "the said defendants, or such of them as shall be found liable to your orator, and the judgment and other creditors of the said bank upon the said stock liability created by the said banking law, * * * be decreed to pay whatever amount shall be found to be due from them and each

of them, respectively, into court, or to the receiver appointed by the court, and that out of the fund so created orator's judgment be paid in full, and the balance thereof distributed among the other creditors of such bank in such way as the court shall direct." I doubt much whether it is necessary that a bill contemplated by the second section of the act of June 30, 1876, needs to purport expressly on its face to be filed by the complainant on behalf of himself and all other creditors. The law itself gives that direction and force to the bill, and, whether the complainant says so to the court or not, it would be the duty of the court to treat such a bill as only filed in behalf of the complainant and all other creditors of the bank. The complainant in this case proceeded, evidently, upon the assumption that, having been first in diligence, he was to be first in right, and had become entitled to be paid in full, before any part of the proceeds, which should be collected through the agency of his bill, should be distributed to other creditors; but the manifest intention of the national banking act is a distribution of its assets, in case a bank becomes insolvent, equally among all the unsecured creditors, and the diligence of a creditor who files a creditor's bill, especially for the purpose of enforcing the stockholders' liability, can give him no greater rights than are given any other creditor to share in the distribution of the assets. This complainant in effect, as I have already quoted from the amended bill, asks that the benefit of his suit should be given to himself and the other creditors. He asks, however, that he be allowed a priority over the other creditors in the distribution of the fund collected. This the law would not allow, and his praying for it in his bill would not justify the court in giving it to him. If, however, it is necessary that the bill should purport upon its face to be filed in behalf of the complainant and all other creditors, it is not a matter of substance, but only a mere matter of form, which can be amended at any time before the entry of the final decree in the case; and, as a matter of precaution, perhaps, the complainant had better so amend his amended bill as to show that it is filed in behalf of himself and all other creditors. It is stated in the briefs of counsel that if an amendment of this character is allowed, it would be equivalent to the filing of a new bill, and will entitle them to set up the defense of the statute of limitations, which, they insist, has run in their favor since the original bill was filed. I do not agree with the learned counsel, from whom this suggestion comes, in regard to this effect of the amendment; but in order to preserve all their rights, if the complainant amend as suggested, I shall allow defendants to complete the record by amending their answer so as to set up the statute of limitations.

*Second.* It is further urged in behalf of these stockholder defendants that the amended bill is not germane to the subject-matter of the original bill, and that it makes the bill as a whole multifarious. I do not see that there is any force in this objection to, or criticism

of, the amended bill. The original bill, as heretofore stated, was a creditor's bill. It sought to reach all the assets available for the purpose of paying the debts of this bank. No specific allegation or charge was made upon which to found a decree against the stockholders for their liability on their stock, and the stockholders were not made parties; but the decree against the stockholders would be, in no sense, contradictory to a decree against any other person who might be made defendant for the purpose of reaching assets in his hands, or securing the payment to the receiver of any liability which was owing to the bank. The scope of the bill is in no degree changed. It is, at most, only enlarged in reference to the number of persons to be acted upon, and to some extent in reference to the character of the liability of such persons. I am, therefore, of opinion that this objection is not well taken.

The third objection is, that prior to the passage of the amendment of June 30, 1876, the supreme court of the United States had held, in *Kennedy* v. *Gibson*, 8 Wall. 498, that the stockholders' liability could only be enforced through a receiver appointed by the comptroller of the currency; that a receiver could only be appointed by the comptroller of the currency in certain contingencies, such as that the bank has failed to pay its circulating notes, had failed to keep good its reserve, or to make good its capital stock when impaired; that a receiver could not be appointed by the comptroller of the currency for a bank which had gone into voluntary liquidation, and that the act of June 30, 1876, created a new liability, or rather provided for enforcing the stockholders' liability under circumstances where it could not have been enforced before; and that, therefore, the act of June 30, 1876, is only applicable to banks which shall have gone into voluntary liquidation after the passage of the act, and is not applicable to cases like this, where the bank had gone into voluntary liquidation before the passage of this act.

Section 5151 of the national banking act declares "shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at par value thereof, in addition to the amount invested in such shares." This position on the part of the defendants finds its main support in some of the expressions of the court in *Kennedg* v. *Gibson*, 8 Wall. 498, where it is intimated that the stockholders' liability can only be enforced by the comptroller of the currency through a receiver appointed by him; but it has never seemed probable to me that, even if the amendment of June, 1876, had not been passed, that the supreme court would fully adhere in future cases to the intimations in the case just quoted. The obvious intent and purpose of the national banking act was to make every stockholder liable to the extent of the amount of stock held by him at the par value thereof, in addition to the amount invested by him in such

shares. This stockholders' liability was one of the securities which these institutions gave to those who might become their creditors, and I never doubted that if a case should come before the supreme court, where the comptroller had acquired no right, or had exercised no right, if he acquired one, to appoint a receiver under the power delegated to him by the law, and yet it was found necessary, in order to pay the debts, to resort to the stockholders' liability, that the courts would say that the power to enforce such liability rested in a court of equity, and could be enforced through such court. It seems to me so palpable that this stockholders' liability was one of the securities to the public dealing with the bank, that the court would have been astute, if necessary to find a means of enforcing such liability, whenever a necessity for so doing exhibited itself; and I therefore never doubted that even if the act of June, 1876, had not been passed, the creditors of a national bank could have reached the stockholders, when necessary, through the aid of a court of equity, adapting itself by its flexible methods to all the necessities of the case.

I cannot believe that the courts would have allowed the benefit of this liability to stockholders to be lost to creditors merely because congress had not specifically directed how this liability was in all cases to be enforced. It therefore seems quite evident to me that the act of June 30, 1876, did not create any new liability, nor did it even provide for enforcing such liability against stockholders under circumstances where it could not have been enforced before that act was passed. This act, then, is not retroactive, and does not create rights which did not exist prior to its passage as against these stockholders. If any construction is to be given to this act, it is that of limiting the tribunal in which proceedings are to be instituted for enforcing the stockholders' liability to a United States court, instead of allowing creditors to resort to any competent tribunal with equity power. I am, therefore, of opinion that it was competent for this court to allow the complainant to amend his original bill by enlarging its scope so as to reach the stockholders and enforce their liability as such.

Four of the defendant stockholders—Ira Holmes, Edgar Holmes, M. D. Buchanan, and W. G. E. Pope—have, either by plea or answer, set up their discharges in bankruptcy as a defense in this case. On the seventh of May, 1879, an order was entered in this case of the following tenor: "And the complainants, confessing the pleas of bankruptcy herein filed by Edgar Holmes, [and the other defendants,] it is ordered that this case be stayed as to them." It is now urged that this amounts to a decree in favor of these defendants upon their pleas in bankruptcy. This can, in no sense, it seems to me, be held to be a final decree in favor of these defendants; it is merely an order that the proceedings be stayed as to those defendants, the complainant confessing the facts set up in the pleas, —not confessing the law or the sufficiency of the pleas as a defense,

but simply confessing the facts, and leaving it for the courts to adjudge the law upon those confessed facts whenever the main cause should come on for hearing.

The question then arises, do these pleas offer or present a sufficient defense to these defendants' liability as stockholders of this bank? Section 5068, Rev. St., tit. "Bankruptcy," is as follows:

"(6) In all cases of contingent debts and contingent liabilities contracted by a bankrupt, not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with right to share in the dividends, if the contingency happened before the order for the final dividend; or he may at any time apply to the court to have the present value of the debt or liability ascertained or liquidated, which shall be done in such manner as the court shall order, and he shall be allowed to prove for the amount so ascertained."

The facts in this case, so far as applicable to this defense, are briefly these: On February 3, 1875, the complainant filed the original bill in this case. On the fifth of October, 1876, the amended bill was filed, which brought the stockholders before the court. There has been a receiver in this case, appointed under the original bill, ever since February 26, 1875, and these defendants have all been adjudged bankrupts since the amendment to the bill was filed. After the appointment of this receiver, and especially after the amendment of the bill and enlargement of its scope, so as to reach the stockholders, it was certainly competent for the receiver to have proved the claim in bankruptcy against these stockholders. He could, as readily then as now, have ascertained the amount of the assets and liabilities of the bank, and have made as close an approximate estimate of the amount which would be required to be collected from the stockholders, as he can now. The two factors for estimating the extent of the stockholders' liability, the debts and assets, were as well known then as now. But if he could not have done it at that time; if the assets of the bank had not been then so far converted, or made available, as to be able to show just what would be required from the stockholders,—the court of bankruptcy would undoubtedly have given time, and so far delayed the proceedings as to enable such an estimate to be made before closing the affairs of the bankrupt estate and ordering a final dividend. From the time this bank suspended, the only element of contingency which can be said to have characterized this stockholders' liability, so far as these defendants are concerned, was as to its amount. From the time these men became stockholders, they stood liable for the debts of the bank to the extent of the stock held by them, if it should become necessary to resort to such liability after exhausting the assets of the bank, and therefore the receiver stood in a position, at the time these bankruptcy proceedings were pending, to have proved these claims before the bankruptcy court. In *Riggin* v. *Magwire*, 15 Wall. 549, the supreme court says: "As long as it remains wholly unsettled whether a contract or engagement will ever give rise to an actual duty or liability, and there is no means of removing the

uncertainty by calculation, such contract or engagement is not provable." But here there was a method, as it seems to me, of removing the uncertainty, as to the extent or amount of these stockholders' liability, by a simple calculation as to how much would be needed to pay the debts of the bank after exhausting the assets, and this balance or deficiency was the measure of the stockholders' liability to the extent of an amount equal to the amount of his stock. Without, therefore, discussing the numerous authorities which are cited by the counsel on both sides of this case, I shall hold that these pleas in bankruptcy are a sufficient bar in behalf of these defendants.

By the other special matters of defense set up in the answer of some of the defendants, two questions are raised: (1) The kind and amount of proof required to show that the defendants are shareholders in the bank. (2) Does an assignment of shares, made after the bank suspended payment, relieve the shareholder from liability?

As to the first question, these defendants have all or nearly all of them answered, admitting that they were shareholders in the bank, but not admitting the number of shares they respectively held. The proof in the case, as to the names of the shareholders and the number of shares held by each, consists of the stock ledger and stubs of the stock certificates, and the dividend sheets of the bank, and they all show the number of shares standing in the names of these defendants, and the number of shares on which they respectively drew the last dividends. This certainly is *prima facie* proof of the fact that these defendants were shareholders, and of the number of shares they held, and unless rebutted is sufficient to sustain the allegations of the bill. *Turnbull* v. *Payson*, 95 U. S. 418. As the proof corresponds with the allegations of the bill, the finding must be that these defendants are shareholders as charged.

As to the second point made, the proof shows that some of these defendants have transferred their shares since the bank suspended payment. And in some cases the defendants allege that they had negotiated a sale of their shares before the suspension, but the transaction was not consummated by a transfer on the books of the bank until after the suspension of payment.

The bank act (section 5138, Rev. St.) makes the shares in national banks "transferable in the books of the association, in such manner as may be prescribed by the by-laws or articles of association," and every person becoming a shareholder by such transfer, "shall succeed to all the rights and liabilities of the prior holder of such shares;" and the provisions of the law require lists of the shareholders to be kept by the bank, which list shall be subject to inspection by all shareholders and creditors of the bank.

In the light of these provisions of the law, shareholders of a national bank must remain liable until a transfer of their shares is made on the books of the bank; and a transfer of shares, after the bank has become insolvent, certainly cannot be construed to release

the shareholders from liability to the creditors of the bank, for the reason that it would enable the shareholders to wholly escape liability by transferring their stock to irresponsible persons after it became evident that the shares were not only valueless, but that they involved an actual and pending liability for debts of the bank. After a national bank, therefore, has become insolvent, and has closed its doors for business, its shareholders' liability to creditors must be so far fixed that any transfer of such shares must be held fraudulent and inoperative as against the creditors of the bank. If shareholders, at the time the bank suspended, can evade liability by a transfer of their shares, those to whom they so transfer can also escape by the same method, even after suit is commenced. It seems, therefore, quite clear to me that those who are shareholders when a bank suspends must bear the burden imposed by the law in favor of creditors.

A decree will, therefore, be entered referring the case to one of the masters of this court to hear proof, and report the amount of the debts of the bank still unpaid, the value of the assets of the bank still available for the payment of such debts, and the amount of assessment necessary to be made on each share of the capital stock in order to fully meet the indebtedness.