WILLIAMSON et al. v. AMERICAN BANK et al.

(Circuit Court of Appeals, Fourth Circuit. May 8, 1902.)

No. 431.

NATIONAL BANKS—VOLUNTARY LIQUIDATION—ENFORCEMENT OF LIABILITY OF STOCKHOLDERS.
Where a national bank goes into voluntary liquidation, the only authorized procedure for the enforcement of the individual liability of its stockholders is that prescribed by Act June 30, 1876 (19 Stat. 63), by a suit in equity in the nature of a creditors' suit brought on behalf of all creditors in a court for the district in which the bank is located, in which the necessity and extent of the ratable enforcement of the stockholders' liability shall be determined. Such suit should be against the bank and all its stockholders, and, in case ancillary proceedings should be necessary for the collection from nonresident stockholders of their ratable proportion of the amount necessary to pay creditors, such suits should be authorized by the court of original jurisdiction, and brought by a receiver or other person appointed by such court.[1]

[1] See Banks and Banking, vol. 6, Cent. Dig. §§ 932, 933.

Appeal from the Circuit Court of the United States for the District of South Carolina, at Greenville.

On December 11, 1897, pursuant to resolutions and orders of its stockholders, the National Bank of Asheville, a body corporate, organized and established under and by virtue of the statutes of the United States known as the "National Banking Act," by and through its proper officers, executed to W. B. Williamson a general deed of assignment assigning, transferring, and conveying to the said W. B. Williamson all its property, estate, notes, accounts, claims, evidences of debt, and all demands and rights of action whatsoever, due or to become due to said bank, in trust to collect the amounts due and owing upon the same, and to apply the proceeds of the property so assigned to the payment of the expenses of the trust and the debts of the bank, in the manner set forth in the said deed of assignment. This action appears to have been taken owing to the financial embarrassment of the bank, with the intent to effect the voluntary liquidation of the corporation, and close out its business under the provisions of section 5220 of the Revised Statutes of the United States. On October 20, 1900, the said trustee, W. B. Williamson, and the Battery Park Bank, citizens of North Carolina, on behalf of themselves and all other creditors of the National Bank of Asheville, filed their bill in the circuit court of the United States for the district of South Carolina against American Bank, a corporation duly organized and doing business under the laws of South Carolina, and W. L. Gassaway, cashier and trustee for said bank, citizens and inhabitants of the district of South Carolina, alleging, inter alia, that the National Bank of Asheville, when engaged in a general banking business, became indebted to the Battery Park Bank in the sum of $10,000, and that of said indebtedness a balance amounting to upwards of $6,000, and interest thereon, still remains due and unpaid; that the National Bank of Asheville is insolvent, and unable to pay its debts, and that Williamson, the trustee appointed by said bank under its resolution to go into voluntary liquidation, is engaged in administering the assets of the bank pursuant to said resolutions; that the said bank is largely indebted to other persons and corporations, whose names are unknown to the plaintiffs, and that the assets of the bank are exhausted, or so incumbered that they cannot be reached by said creditors, and that the amount of such indebtedness will equal, if not exceed, the capital stock of said bank; that the creditors are entitled to have enforced against the several shareholders of said bank the individual liability provided by the laws of the United States, to the extent of the amount of their stock therein at the par value thereof, and to have the same applied equally and ratably to all debts due and owing by the said bank; that at the time the said National Bank of Asheville became insolvent, and at the time it went into voluntary liquidation, the said American Bank was a stockholder in said National Bank of Asheville, owning 200 shares of the par value of $25 each therein, which shares are standing in the name of said W. L. Gassaway, as trustee for said American Bank; that said American Bank and W. L. Gassaway, as its trustee, are liable to the creditors of said National Bank of Asheville, including said Battery Park Bank, and (as plaintiffs are advised and believe) to said W. B. Williamson, as trustee for the National Bank of Asheville, equally and ratably with all other stockholders of said bank, for all contracts, debts, and engagements of said association, to the full extent of the amount of their stock therein, to wit, in the sum of $5,000. They pray for a decree in favor of said Battery Park Bank for the amount due said bank, and that defendants may be decreed to pay such other creditors as may become parties to the bill such sums as may be found due them, or to pay to said W. B. Williamson said amount as trustee for said creditors, etc. Demurrers were interposed to this bill on behalf of American Bank and W. L. Gassaway, cashier, and on May 23, 1901, after argument thereon, the court sustained said demurrers, and dismissed the bill on the ground that it appeared from the allegations of the bill that the court was without jurisdiction. From the order sustaining the demurrers and dismissing the bill (109 Fed. 36) the plaintiffs prayed an appeal, which was allowed.

M. F. Ansell, for appellants.

H. J. Haynsworth (L. O. Patterson, on the briefs), for appellees.

Before GOFF and SIMONTON, Circuit Judges, and KELLER, District Judge.

KELLER, District Judge, after making the foregoing statement, delivered the opinion of the court.

The demurrers from the decree sustaining which the plaintiffs appealed were interposed upon the following grounds: That the circuit court of the district in which the bank was located or established alone had jurisdiction of a bill by a creditor of a national bank in voluntary liquidation to ascertain and enforce the statutory liability of the shareholders of such bank to the creditors thereof; that in such a suit the other shareholders of the bank are necessary parties, and were not made such; and that there was a misjoinder of parties plaintiff, as there was no interest in common between the trustee, Williamson, and the creditor. The bill under consideration appears to have been drawn with the view of conforming in a general way to the provisions of section 2 of the act of June 30, 1876 (19 Stat. 63), which provides that:

"Whenever any national banking association shall have gone into liquidation under the provisions of section 5220, the individual liability of the shareholder provided by section 5151 may be enforced by any creditor of such association by bill in equity in the nature of a creditors' bill brought by such creditor on behalf of himself and all other creditors of the association, against the shareholders thereof, in any court of equity for the district in which such association may have been located or established."

It departs from the provisions of that act, however, in three important particulars: First, it was not brought within the district pointed out by that act; second, it was not brought against the stockholders generally, but against an individual stockholder and its trustee, in whose name its stock stood; and, third, it joined with the plaintiff creditor, as joint plaintiff, the agent appointed by the stockholders to collect and distribute the assets of the bank under its resolution to go into voluntary liquidation. Prior to the enactment of the act of June 30, 1876, the law relating to national banks and to the enforcement of the statutory liability of their shareholders was contained solely in the Revised Statutes. Section 5151, Rev. St., provided that:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Had it not been for this provision, no personal liability would have rested upon the shareholders of national banks, beyond the ordinary contractual liability for the payment of the par value of the shares subscribed for by them; and, this being true, it is essentially necessary that, when such added liability is alleged to exist and be enforceable, it be ascertained and enforced in the mode pointed out by statute. Section 5220 of the Revised Statutes provides that "any association

may go into liquidation and be closed by a vote of its shareholders owning two-thirds of the stock." Section 5234 provides that when any national banking association has failed to redeem any of its circulating notes on presentation, and the comptroller of the currency has become satisfied of that fact by the means pointed out in sections 5226, 5227, Rev. St., he may forthwith appoint a receiver for such association, who, when appointed, is empowered by said section, under the direction of the comptroller of the currency, to take possession of and collect all assets of the association, etc., and "may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders." It will be observed that prior to the passage of the act of June 30, 1876, this was the only method pointed out by law for the enforcement of the liability created by section 5151, Rev. St., and it appears to have been available only after default by the association in the matter of redeeming its outstanding notes. If this view be correct, and such association promptly redeemed its circulating notes when presented, no occasion would have arisen under the law, as it then existed, for the appointment of a receiver by the comptroller, and no suitable remedy was provided by statute for the enforcement of this statutory liability on behalf of the general creditors of the association in such a case. The case of Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476, cited by counsel for the appellees, holds that under the then state of the law creditors could not proceed against the stockholders in their own names directly, but must seek their remedy in the mode prescribed by the statute, through the intervention of the comptroller of the currency; and that action on the part of the comptroller touching the personal liability of the stockholders must indispensably precede the institution of any suit by the receiver to enforce the same, and that this fact must be averred in the bill. The reason of this is plain, because the receiver can only enforce this liability when necessary, and the comptroller had then to determine whether or not it was necessary. The case of Kennedy v. Gibson, it is to be remembered, however, was one in which default had been made by the association in redeeming its circulating notes, and a receiver had been appointed by the comptroller of the currency, and it appears that prior to the passage of the act of June 30, 1876, no adequate statutory remedy existed for the enforcement of this liability on behalf of general creditors where no such default had been made. In fact, it appears that prior to the act of June 30, 1876, the stockholders were not in terms made liable to the creditors of the association, but for its debts. See the language of section 5151, Rev. St. However this may be, the congress, seeing some evident need for the relief of the creditors of an association in process of voluntary liquidation, passed the act of June 30, 1876, the second section of which has been heretofore quoted. It may well be that, prior to the passage of the act of June 30, 1876, the courts of equity of the United States would have had jurisdiction to entertain a general creditors' bill in a proper case to enforce the liability of stockholders provided by section 5151, Rev. St., and for which no statutory remedy had been provided, in cases where the bank went into voluntary liquidation, and was found to be without sufficient assets for the dis-

charge of all its debts. While this point has never been expressly decided, the following language from the opinion of the supreme court, by Mr. Justice Matthews, in the case of Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864, etc., is significant:

"It thus appears that in the case of an involuntary liquidation under this section [5234, Rev. St.] the business of liquidation, as defined and required by the law, involved the appointment of a receiver, who should, in addition to the collection of the ordinary assets of the bank, also enforce against the stockholders their individual liability, so far as necessary to create a fund sufficient to pay all the debts of the association. It can hardly be supposed that the omission of the statute to provide an express and specific course of proceeding, by way of judicial remedy, in case of voluntary liquidation, left the creditors of such an association in such circumstances without remedy against a deficiency of assets or the results of a fraudulent maladministration. Section 5151 imposes upon the shareholders of every national banking association an individual responsibility for all its contracts, debts, and engagements; and the terms in which the obligation is created are unconditional and unqualified, except that the liability shall be equal and ratable as among the shareholders. As all the shareholders are bound in that way to all creditors, any proceeding to enforce this liability must be such as, from its nature, would enable the court to ascertain for what the stockholders ought to be made liable, and in what proportion as respects each other."

Again, in the same case, the court, referring to section 2 of the act of June 30, 1876, says:

"This section was in force when the first amended bill was filed in October, 1876. Whether we regard it as merely declaratory of the law as it stood under the original banking act, or as giving a new remedy which could not have been resorted to before, we think it warranted the court below in permitting the complainant to file his first amended bill."

Whatever may have been the proper course of procedure to enforce the liability of stockholders to creditors of a national banking association in process of voluntary liquidation prior to the passage of the act of June 30, 1876, we are clearly of the opinion that since its passage the remedy provided by that act is exclusive in such cases, and must be strictly pursued, and that suit must, therefore, be brought "in any court of equity for the district in which such association may have been located or established," and not elsewhere. See Pollard v. Bailey, 20 Wall. 527, 22 L. Ed. 376; Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825. It is urged by appellants that such a remedy would be ineffectual to give a personal decree against nonresident stockholders, such as the defendants in this case. We will not stop at this time to consider whether or not this is true. It is not necessary in the consideration of this case.

Section 5151, creating this statutory liability, provided that the stockholders "shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association," and it therefore becomes essential in such a suit that the entire status of the affairs of the bank be investigated, and a reference had to determine what proportional part of the shareholders' liability will be necessary to be enforced against them, equally and ratably, to provide for the payment of the creditors. For this purpose the books of the bank are essential, the bank is a necessary party, and what provision could the congress have made more

wise than that the suit shall be brought in the district where the bank was located or established, and where its books and accounts are to be found? It may be true that some ancillary proceeding must be had to enforce the liability of nonresident stockholders by way of collection; but, before this can be enforced at all, its amount must be accurately ascertained and determined, and this, we hold, can only be done in the suit brought as provided by the act of June 30, 1876. Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168. Suppose, for a moment, suits of this nature were permitted to be brought in the various jurisdictions where nonresident stockholders were found. The question of the necessity and extent of the ratable enforcement of the stockholders' liability, the settlement of the accounts, and the extent of the indebtedness of the bank would have to be determined in each case, and might possibly be determined differently in different suits brought in different jurisdictions, and a multiplicity of suits would be occasioned, involving in each the determination of facts which, in a suit properly brought under section 2 of the act of June 30, 1876, could and would be determined once for all. In our view of this case, no suit can be brought by and on behalf of the creditors for the enforcement of this statutory liability save in the district where the bank was located or established, and, if any ancillary proceedings should become necessary for the collection from nonresident stockholders of their ratable proportion of the amount necessary to pay the creditors, such proceedings would have to be authorized by the court of original jurisdiction, and brought by a receiver or other official appointed by said court, after a settlement of the accounts of the bank, and a determination of the ratable proportion necessary to be collected; and these facts would have to be averred in any suit brought to enforce the same.

We also think that there was no privity of interest between the plaintiffs, and that there was a misjoinder thereof. The plaintiff Williamson was the agent of the stockholders for the collection and disbursement of the assets of the bank, and for no other purpose, and as such agent occupied rather the position of a defendant than a plaintiff in a suit brought under the provisions of the act of June 30, 1876. Indeed, we think in such a suit brought in the home jurisdiction of the bank he would be a necessary party defendant, as his accounts would have to be settled before a finding could be reached as to the pro rata share of the statutory liability necessary to be enforced against the stockholders. In any event, he should not be joined as plaintiff with the creditor, as no rights were or could be conferred upon him, by virtue of his appointment, to enforce this liability.

We find no error in the decree of the circuit court for the district of South Carolina sustaining the demurrers and dismissing the bill, and the same is accordingly affirmed