KING v. POMEROY.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1903.)

No. 1,798.

1. NATIONAL BANKS—VOLUNTARY LIQUIDATION—SHAREHOLDER'S LIABILITY—COURT'S RECEIVER MAY ENFORCE.

Under the act of June 3, 1864, c. 106 (13 Stat. 99), authorizing the formation of national banks, a federal court sitting in equity had jurisdiction in a proper case to appoint a receiver to liquidate its obligations, and to authorize him to collect and to enforce by action the liability of the shareholders of the bank under section 12 of the act (section 5151, Rev. St. [U. S. Comp. St. 1901, p. 3465]).

2. RECEIVER—HAS RIGHTS OF CREDITORS AS WELL AS DEBTORS.

In the absence of restrictive legislation, a receiver in liquidation proceedings may ordinarily enforce the rights of creditors as well as the rights of the debtor.

3. NEW REMEDY—CUMULATIVE, NOT EXCLUSIVE.

While a remedy given by the act creating the right is ordinarily exclusive, a new remedy provided in a case in which the right and an appropriate remedy already existed is merely cumulative, and the injured party is at liberty to pursue either.

4. NATIONAL BANKS—VOLUNTARY LIQUIDATION—REMEDY OF CREDITORS' SUITS NOT EXCLUSIVE.

The remedy of a creditor's suit to enforce the liability of shareholders of national banks in voluntary liquidation, provided by section 2 of the act of June 30, 1876, c. 156 (19 Stat. 63 [U. S. Comp. St. 1901, p. 3509]), is cumulative and not exclusive.

5. SAME—ACTION OF COMPTROLLER, WHEN UNNECESSARY.

In cases in which a court of equity appoints a receiver to liquidate the debts of national banks in voluntary liquidation no action of the comptroller is requisite to empower the court's receiver to enforce the liability of the shareholders. The court has plenary power to ascertain the necessity of enforcing the liability, and to direct its receiver to collect it.

---

¶ 1. Actions by and against receivers and "agents" of national banks, see note to McCartney v. Earle, 53 C. C. A. 398.

¶ 4. Enforcement of statutory liability of shareholders in national banks, see note to Williamson v. American Bank, 52 C. C. A. 6.

See Banks and Banking, vol. 6, Cent. Dig. §§ 932, 933.

**6. SAME—SHAREHOLDERS' LIABILITY—STATUTE OF LIMITATIONS.**

The statute of limitations does not run against an action to enforce the liability of a shareholder of a national bank during the time while proper liquidation proceedings are pending in a court of equty.

**7. SAME.**

The liability of a shareholder of a national bank whose affairs are in course of judicial administration in a court of equity does not mature until the court ascertains the necessity of enforcing it, determines the amount which the shareholder must pay, and fixes the time of payment; and the cause of action of the receiver of the court to enforce the liability does not accrue until the liability thus matures.

**8. OPINIONS—GENERAL STATEMENTS NOT AUTHORITATIVE BEYOND QUESTION AT ISSUE.**

General expressions in the opinions of courts are not authoritative be-yond the questions which they were considering and deciding when they used them.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

The writ of error in this case challenges a judgment which sustains a de-murrer to a complaint made by Albert S. King, as receiver of the First National Bank of Frankfort, in the state of Kansas, against J. P. Pomeroy, a shareholder of that bank. These are the material facts which the bill dis-closes: The First National Bank of Frankfort was located at that town, in the state of Kansas, on April 13, 1891, and the defendant, Pomeroy, owned 70 shares of its stock, of the par value of $100 per share. That bank went into voluntary liquidation under section 5220 et seq. of the Revised Statutes [U. S. Comp. St. 1901, p. 3503] on April 6, 1891. It was insolvent, and the Comptroller of the Currency was requested to appoint a receiver of its prop-erty, and he refused to do so on the ground that he had no jurisdiction over the affairs of a bank in voluntary liquidation. Thereupon, on April 13, 1891, a creditor of this bank, a citizen of the state of Missouri, filed a bill against it in the United States Circuit Court for the District of Kansas, wherein, for reasons it is unnecessary to state, it prayed for the appointment of a receiver of the assets and credits of the bank and the liabilities incident thereto, to the end that he might convert them into money and liquidate its liabilities. The bank appeared in the court, and consented to the appointment of a re-ceiver, and he entered upon the discharge of his duties. He gathered the tangible assets of the bank, converted them into money, and distributed the proceeds, until, in December, 1898, he reported that these assets were all disposed of except $665.14 in cash, that the unpaid liabilities of the bank were still $36,301.74, and he prayed for directions regarding the enforcement of the liabilities of the shareholders. On September 5, 1899, H. D. Stone, a creditor who had proved his claim against the estate of the bank, intervened in this suit, pleaded his claim, the cash in the receiver's hands, the disposi-tion of all the tangible assets of the bank except this, the indebtedness of the bank, the names and addresses of its stockholders, and prayed that the court would ascertain the necessity of the enforcement of the liability of the shareholders, that it would make an assessment upon them, and that it would appoint a receiver to collect this assessment. On February 12, 1900, the court made an interlocutory decree, in which it found the facts set forth in the intervening petition to be true, that the amount of the assessment neces-sary to pay the debts of the bank was 38.84 per cent. of the par value of the stock, that an assessment of that amount be made, and that the amounts of this assessment should be paid by the respective shareholders to the receiver who had theretofore been appointed in the suit within 60 days from the date of the order. The assessment upon the stock of the defendant, Pomeroy, under this order was $2,716.80. It is for this amount, upon this state of facts, that the receiver of the Circuit Court has brought the action now before us. The court below held that these facts stated no cause of action, and dis-missed the case.

W. W. Guthrie and W. F. Guthrie, for plaintiff in error.
B. P. Waggener, for defendant in error.
Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

When a corporation becomes insolvent, all its property and all the liabilities of the guarantors of its obligations constitute a trust fund pledged to the payment of its debts. And in cases where through fraud or maladministration this fund is being diverted from those who are entitled to receive it, the power is vested in, and the duty is imposed upon, courts of equity to appoint a receiver, to direct him to convert these trust funds into money, and to distribute the proceeds among the creditors. Sawyer v. Hoag, 17 Wall. 611, 622, 21 L. Ed. 731; Hayden v. Thompson, 71 Fed. 60, 66, 17 C. C. A. 592, 598. Such a suit falls within the jurisdiction of a court of equity because it is a suit to execute a trust, because it avoids a multiplicity of suits by each of many creditors, and because the creditors have no adequate remedy at law.

The receiver appointed in such a proceeding is the hand of the court to gather and distribute the trust funds, and in the execution of its orders he has the power and the authority of the court, so that when it is said that the receiver in the action now in hand is without authority or power to maintain this suit, the real contention is that the Circuit Court of the district in which this insolvent bank was located had no jurisdiction to enforce the liability of its shareholders in the proceeding before it. There is nothing in the suggestion that the court may have a power to enforce the liability of the shareholders with which it cannot invest its receiver. If the court has the jurisdiction to enforce this liability, the receiver whom it appoints and directs to do so has all the power of the court to receive the money and to maintain actions to recover it. Receivers of courts of equity appointed in the judicial administration of the affairs of insolvents are, in the absence of restrictive statutes, empowered to enforce the rights of the creditors as well as the rights of the debtor, and there is no restrictive legislation in this case limiting the power of the receiver to maintain this action.

It is conceded in this case that the court below lawfully appointed the receiver, and that by his agency it rightfully collected the debts due to the bank, converted its tangible assets into money, and distributed its proceeds to the creditors. But the contention of counsel for the defendant in error is that the Circuit Court had no power by the hands of its receiver to collect the amount lawfully owing from the shareholders to the creditors, because the latter did not proceed to enforce this liability by the particular suit in equity pointed out by the provisions of section 2 of the act of June 30, 1876, c. 156 (19 Stat. 63 [U. S. Comp. St. 1901, p. 3509]), and because the Comptroller of the Currency has never authorized or directed the institution of this action against the shareholder.

A brief reference in chronological order to the legislation which conditions the soundness of this position will best present the ques-

tions it raises. The jurisdiction of the court below sitting in equity to appoint a receiver, and through him to administer the affairs of an insolvent corporation,' to collect the trust fund pledged to its creditors, and to liquidate its debts, vested in that court when it was established. It existed long before the act of 1864, which authorized the formation of national banks, and the act of 1876, which granted the new remedy upon which counsel now insists, were enacted, and it still exists. It was general and comprehensive. It included all cases of fraudulent diversion or maladministration in which controversies arose between citizens of different states, and it is conceded that this was such a case. This jurisdiction required no special act of Congress to give it effect, but it attached to and embraced every corporation as it came into existence, unless by some act of Congress its extent was curtailed or diminished.

By the act of June 3, 1864, 13 Stat. 99, Congress authorized the formation of national banks, made certain provisions for the supervision and the liquidation of their debts, and then declared that they should not be subject to any visitorial powers other than such as were authorized by that act or were vested in the courts of justice. Rev. St. § 5241 [U. S. Comp. St. 1901, p. 3517]. The courts of justice had power to appoint receivers, and to liquidate the debts of all insolvent corporations, when this act was passed. That power necessarily remained in those courts, and embraced the national banks as they came into existence, except in those cases in which this jurisdiction was withdrawn from the courts by that or some other act of Congress. The act of 1864 provided that in certain cases the Comptroller of the Currency might appoint receivers to liquidate the debts of the national banks and to enforce the liabilities of their shareholders. Under this legislation the Comptroller became a special tribunal, with limited powers, authorized to act in cases specifically named in the statute, but in no other instances. In all other cases the power of appointment of receivers, of liquidation of the debts of the banks, and of enforcement of the liabilities of the shareholders remained in the courts as it existed before. The cases in which the Comptroller was empowered to appoint receivers and to enforce the liability of shareholders were: (1) Where the bank had refused to pay its circulating notes (section 5234, Rev. St. [U. S. Comp. St. 1901, p. 3507]); (2) where it failed to maintain its capital at the minimum (section 5141 [page 3462]); (3) where it failed to maintain its reserve (section 5191 [page 3486]); (4) where it failed to redeem its circulating notes, or to select a place at which it would redeem them (section 5195 [page 3492]); (5) where it failed to dispose of its stock taken as security within six months (section 5201 [page 3494]); and (6) where it failed to pay up its capital stock and refused to go into liquidation (section 5205 [page 3495]).

Conceding now that in all these cases in which the power to appoint a receiver and to enforce the liability of the shareholders was vested in the Comptroller by the act of 1864, that authority was thereby withdrawn from the courts under the familiar rule that, where the same act creates the right and prescribes the remedy for its enforcement, that remedy is exclusive, still the fact remains that

in all the cases in which no such power was vested in the Comptroller the jurisdiction and authority of the courts remained unimpaired and plenary. Thus, full jurisdiction still remained in the courts of equity to appoint a receiver to liquidate the debts of an insolvent bank and to enforce the liability of its shareholders where the transfers of notes or other evidences of debt, assignments of mortgages or other securities, deposits of money, bullion, or other valuable things, and payments of money were made by the national banks with a view to give preferences in contemplation of insolvency in violation of section 5242, Rev. St. [U. S. Comp. St. 1901, p. 3517], as well as where a bank had gone into voluntary liquidation under sections 5220 and 5221 [page 3503], and its funds were being fraudulently diverted from the cestuis que trustent. The conclusion that this power still remained in the courts of equity under the act of 1864 is not only a rational deduction from the fact that this part of their general jurisdiction over such corporations, which existed from the time of their creation, was neither expressly nor impliedly taken from them by that act, but, in so far as it relates to banks in liquidation, it is the unavoidable effect of sections 5205, 5220, and 5221, Rev. St. [U. S. Comp. St. 1901, pp. 3495, 3503], when they are read together. Sections 5220 and 5221 and those immediately succeeding them provided that any banking association might go into voluntary liquidation under the direction of its shareholders by a vote of those owning two-thirds of its stock. Section 5205 provided that, if a bank refused to go into liquidation, the comptroller might appoint a receiver, and enforce the liability of its shareholders. The conclusion is irresistible that, if it did go into liquidation, and if it did not fall into any of the other classes of cases in which the comptroller was authorized to appoint a receiver, he was without such authority, and the jurisdiction of the courts over national banks in voluntary liquidation remained as complete as it was over the ordinary insolvent corporation.

The argument that, although a court of equity might have had the authority to appoint a receiver to liquidate the debts of this bank, yet it had no power to enforce the liability of the shareholders, is not persuasive. In the first place, under the act of 1864 there was no other way to collect the amounts owing by the shareholders of a bank in voluntary liquidation save by the decree of a court of equity, and where there is, as in such a case, a clear right, and no other adequate remedy, the cases are rare in which a court of equity will not afford one. In the second place, conceding that this liability was not to the bank, and that it could not be collected or enforced by the debtor, still it was as much a trust fund, or the pledge of a trust fund, for the benefit of the creditors, as any of the tangible property of the corporation, and the enforcement of this liability and the distribution of its proceeds is as much a part of the liquidation of the debts of the bank as the collection and distribution of the proceeds of its bills receivable, or any other of its assets. Hence the conclusion is that, because there was no other adequate remedy to enforce the liability of shareholders of an insolvent national bank in voluntary liquidation under the act of 1864, and because that li-

ability was a trust fund, or the pledge of a trust fund for the benefit of the creditors of the bank, a court of equity had plenary power to appoint a receiver, and to authorize him to enforce that liability by actions at law. Richmond v. Irons, 121 U. S. 27, 44, 48, 50, 7 Sup. Ct. 788, 30 L. Ed. 864; Irons v. Bank, Fed. Cas. No. 7,068; Irons v. Bank (C. C.) 17 Fed. 312, 313; Wright v. Bank, Fed. Cas. No. 18,084; Elwood v. Bank, 41 Kan. 475, 21 Pac. 673; Harvey v. Lord (C. C.) 10 Fed. 238, 239; Wilson v. Book (Wash.) 43 Pac. 939, 940; Farmers' Loan & Trust Co. v. Funk (Neb.) 68 N. W. 520, 522, 524; Hayden v. Thompson, 71 Fed. 60, 66, 17 C. C. A. 592, 598.

The acts of Congress and the rights and remedies of creditors and shareholders of national banks in voluntary liquidation stood in this way from 1864 until Congress passed "An act authorizing the appointment of receivers of national banks and for other purposes," which was approved on June 30, 1876, c. 156, 19 Stat. 63 [U. S. Comp. St. 1901, p. 3509]. This act was not, and it did not purport to be, an amendment of the act of 1864. It was an independent law, giving remedies not provided by the prior act. Section 1 empowered the Comptroller of the Currency to appoint a receiver to close up a national bank and to enforce the personal liability of the shareholders (1) where such a bank was dissolved under section 5239 [U. S. Comp. St. 1901, p. 3515], (2) where a creditor had obtained a judgment against it which had remained unpaid for 30 days, and (3) where a bank had become insolvent. Section 2 authorized any creditor of such a banking association in voluntary liquidation to enforce the liability of its shareholders by a bill in equity brought on behalf of himself and all other creditors of the association against the shareholders in any court of the United States which had general jurisdiction in equity in the district in which the association had been located or established. It is upon this second section, and upon the fact that the suit in equity in which this receiver was appointed was not a proceeding under that section, that counsel relies to defeat this action. But how can this section curtail or affect the undoubted jurisdiction which the federal courts had when it was enacted to enforce by the hands of their receivers the liability of shareholders of banks in voluntary liquidation through suits in equity for a judicial administration of their affairs? It does not in terms withdraw or limit the power of courts of equity. It is not inconsistent with the existence or the exercise of that power. It simply extends to every creditor a remedy which creditors who were citizens of states other than that of the location of the bank had before it was enacted. It does not present a case in which the remedy is given in the same act which creates the right, so that it is rendered exclusive by that fact, as in Pollard v. Bailey, 20 Wall. 527, 22 L. Ed. 376, and National Bank v. Francklyn, 120 U. S. 756, 7 Sup. Ct. 757, 30 L. Ed. 825. On the other hand, it falls under the converse of this principle. It falls under the familiar rule that, where a statute simply gives a new remedy in a case in which the right and an appropriate remedy existed before its enactment, it is cumulative, and not exclusive, and the party injured is at liberty to pursue either remedy. Sedgwick on Construction of Statutory and Constitutional Law (2d Ed.) p. 342, 340–4;

Wright v. Bank, Fed. Cas. No. 18,084; Clements v. Bowes, 17 Sim. 167, 175. In the case last cited there was a demurrer to a bill brought by a shareholder of a railway company on behalf of himself and others, in which he prayed for an account of the receipts and payments of the defendants on behalf of the company. This demurrer rested on the ground that the Legislature had provided a different method of winding up and dealing with the affairs of a railway company. But the court said:

"To oust the jurisdiction of the court of chancery in such a case, the Legislature should have so declared it. It is plain, where the court of equity has jurisdiction in such a case, an act giving further relief does not by that oust the title of the court of equity, without express terms being used to put an end to the jurisdiction which is inherent in the court."

This rule is familiar, and needs no citation of authorities to sustain it. It has been repeatedly applied to the very act under consideration, and both reason and authority persuade that the remedy which the act of 1876 gave was cumulative, not exclusive, and that the jurisdiction and power remained after as before its passage in the federal courts to appoint receivers of national banks in voluntary liquidation in proper cases, and to empower these receivers to enforce by actions at law the liability of the stockholders. Harvey v. Lord (C. C.) 10 Fed. 236, 238; Irons v. Bank (C. C.) 17 Fed. 308, 312, 313; Richmond v. Irons, 121 U. S. 27, 44, 48, 50, 7 Sup. Ct. 788, 30 L. Ed. 864.

In opposition to this conclusion counsel for the defendant in error cites and relies upon Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476; Bushnell v. Leland, 164 U. S. 685, 17 Sup. Ct. 209, 41 L. Ed. 598; Cook County Nat. Bank v. United States, 107 U. S. 449, 2 Sup. Ct. 561, 27 L. Ed. 537; and Williamson v. American Bank, 115 Fed. 793, 52 C. C. A. 1. The three cases from the Supreme Court do not touch the question at issue. The first two simply hold that in the classes of cases in which the power to appoint a receiver of a national bank that is not in voluntary liquidation was granted to the Comptroller of the Currency by the act of 1864 and in which that authority had been exercised by him, his decision that it was necessary to enforce the liability of the shareholders under section 5234, Rev. St. [U. S. Comp. St. 1901, p. 3507], was conclusive of that question, in the absence of a direct attack upon it for error of law, fraud, or mistake; and that such a decision and order was a prerequisite to an action by his receiver against a shareholder to enforce his liability. Deweese v. Smith, 106 Fed. 438, 45 C. C. A. 408. But there is nothing in the opinions or decisions in these cases to the effect that any action of the Comptroller is either authorized or required to empower a court which has lawfully taken jurisdiction of the administration of the affairs of an insolvent bank in voluntary liquidation to empower its receiver to enforce the liability of the shareholders of such a bank. In such a case the Comptroller has neither jurisdiction nor authority. The court which is conducting the litigation is vested with plenary power to effect and to complete it. The determination of the necessity of enforcing the shareholders' liability, and of the amount required from the shareholders to complete the liquidation, is a necessary

step in the proceeding before it; one which the court has ample authority to take, and in which its decision and order is as conclusive as is the Comptroller's in the cases within his jurisdiction. The court draws to itself the requisite jurisdiction to complete the administration which it is conducting, and excludes the jurisdiction of all other tribunals.

The case of Cook County Nat. Bank v. United States, 107 U. S. 449, 2 Sup. Ct. 561, 27 L. Ed. 537, is still wider of the mark. The only question there at issue was whether the distribution of the proceeds of the liquidation of a national bank in one of the cases in which the Comptroller was given jurisdiction by the act of 1864 was governed by the general law, which gives a preference to the United States in the administration of the estates of insolvents (Rev. St. § 3466 [U. S. Comp. St. 1901, p. 2314]), or by the provisions of the national banking act of 1864, which specifically prescribe the method of distribution of the proceeds of the liquidation of such banks (sections 5234, 5236, Rev. St. [U. S. Comp. St. 1901, pp. 3507, 3508]); and the court held that the provisions of the latter act which were inconsistent with the general law must prevail upon the familiar principle that, where a special act and a general law are inconsistent, they must, if possible, stand together; the former as the law of the particular case, and the latter as the general law of the land. Board of Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585, 590. It is not claimed that the question before us in this case ever occurred to the mind of the justice who wrote the opinion in that case or to that of any member of the court which decided it, much less that it was ever considered or determined by them. But counsel founds an elaborate argument for the exclusiveness of the remedy prescribed by the act of 1876 upon some general remarks which fell from the lips of the learned justice who delivered the opinion in that case to the effect that the act authorizing the formation of national banks was complete in itself, and that it constituted a complete system for the establishment, government, winding up, and distribution of the proceeds of such institutions. These statements were true and conclusive so far as they related to the facts presented and the questions at issue in that case, but they were neither true nor authoritative upon the facts conceded and the question at issue in the case at bar. They were not true, because, as we have seen, the act authorizing the formation of national banks—the act of 1864—provided no method of winding up the affairs of a national bank in voluntary liquidation in cases of fraud or maladministration, no remedy for the enforcement of the liability of shareholders in such a case, no procedure for the avoidance of the acts of preference denounced by section 5242, Rev. St. [U. S. Comp. St. 1901, p. 3517], and no remedy for the enforcement of many other rights which vest under the national banking act, and which are constantly preserved and enforced by the courts through the exercise of their general jurisdiction. Those statements are not authoritative in this case because the authority of general expressions and broad statements in the opinions of courts is always limited to the specific questions which they were considering and deciding when they were used. Cohens v. Virginia, 6 Wheat. 264, 399,

5 L. Ed. 257; U. S. v. Wong Kim Ark, 169 U. S. 649, 679, 18 Sup. Ct. 456, 42 L. Ed. 890; Northern Bank v. Porter Township, 110 U. S. 608, 615, 4 Sup. Ct. 254, 28 L. Ed. 258; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 574, 15 Sup. Ct. 673, 39 L. Ed. 759.

In Williamson v. American Bank, 115 Fed. 793, 52 C. C. A. 1, the assignee of a national bank located at Asheville, in the state of North Carolina, which was in voluntary liquidation, and a creditor of that bank, exhibited a bill in equity to the judges of the Circuit Court of the District of South Carolina on behalf of themselves and all other creditors against a single shareholder of the insolvent bank and his trustee to enforce the shareholder's liability, and the court sustained a demurrer to the bill. It is plain that the demurrer was properly sustained, because the insolvent bank was a necessary party in the first instance to any suit to enforce the liability of its shareholders, and it was not made a party to that proceeding. The ascertainment of the debts and liabilities of the bank and the judicial determination of the necessity and the requisite extent of the enforcement of the stockholders' liability are essential prerequisites to the collection of the amounts owing by them, and the insolvent bank is a necessary party to these adjudications. The court in that case, however, went farther, stated as one of the reasons for its decision that the remedy for the enforcement of the stockholders' liability under the act of 1876 was exclusive, and cited in support of that conclusion Pollard v. Bailey, 20 Wall. 527, 22 L. Ed. 376, and Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825, which hold that, where the same act creates a right and provides a remedy for its infringement, such a remedy is exclusive. But, as we have seen, the act of 1876 does not fall under this rule, but under its converse, because the right against the shareholders was created by the act of 1864, there was an ample remedy for its enforcement through the general equity powers of the courts before the act of 1876 was enacted, and the remedy given by that act neither expressly nor impliedly abrogated or limited the existing remedy, but merely added another. For this and for the other reasons which have already been stated at length, and because the opinion and decision of the Supreme Court in Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864, has conclusively determined this question otherwise, we are unable to agree with the learned judges of the Court of Appeals of the Fourth Circuit upon the effect of the act of 1876.

In the case of Richmond v. Irons a judgment creditor of a national bank in voluntary liquidation filed a creditors' bill against that bank and its president on February 3, 1875, and prayed, among other things, for the appointment of a receiver of its property to convert it into money, and to apply its proceeds to the payment of his judgment. A demurrer was interposed to this bill upon the ground that a receiver of this character could only be appointed by the Comptroller of the Currency. This demurrer was overruled, and on February 26, 1875, one Harvey was appointed receiver. After the passage of the act of 1876 the Comptroller appointed Harvey his receiver, and as such he undertook to enforce the liability of the shareholders of this bank. He was met by a plea in abatement, and this plea was sus-

tained upon the ground that the receiver appointed by the court had the power to collect the amount owing by the respective shareholders and the Comptroller's receiver should not be permitted to disturb them. Harvey v. Lord (C. C.) 10 Fed. 236. On October 5, 1876, the complainant in the original suit in equity filed an amended bill, in which he alleged that the bank was insolvent, and that it went into voluntary liquidation on September 22, 1873, and in which he set forth the names of the stockholders and the amounts of stock held by them respectively, and prayed, among other things, that an account be taken of the debts and liabilities of the bank, and that the shareholders be required to pay to the receiver the amounts necessary to liquidate the debts of the corporation. The shareholders within the jurisdiction of the court were brought in as defendants. All the objections to the amended bill that have been made in the case before us were interposed in that case. Finally, on July 23, 1883, the complainant again amended his bill so as to allege that it was filed on behalf of himself and all other creditors of the bank, and thereupon a decree was rendered in favor of the complainant to the effect that the shareholders were liable for the debts of the bank, and, after a report had been procured from a master upon the amount of the debts and liabilities of the corporation, an order was made in 1886 that the shareholders should pay an assessment of 83.2 per cent. of the par value of their stock in discharge of their statutory liability. From the final decree in this case some of the shareholders appealed to the Supreme Court, and that court held (1) that the Circuit Court had jurisdiction, before the act of 1876 was passed, to appoint a receiver of the property of an insolvent national bank in voluntary liquidation, and to enforce the liability of its shareholders; and (2) that the passage of that act did not deprive it of that power, but that the court might exercise it in the original suit which had been instituted before the act of 1876 was passed. 121 U. S. 47, 48, 50, 7 Sup. Ct. 788, 30 L. Ed. 864. The suit in which the receiver in the case under consideration was appointed falls within this decision of the Supreme Court, and rests firmly upon the principles upon which that adjudication was based. It was commenced by a creditor of the insolvent Bank of Frankfort, a citizen of the state of Missouri, in the state of Kansas, in the jurisdiction in which that bank was located. The insolvent bank was the defendant in that suit. The court appointed a receiver to liquidate its debts in 1891. The enforcement of the liability of its shareholders was a part of that liquidation, and hence within the jurisdiction of that court, and a part of the duty of its receiver under its orders. On February 12, 1900, after the tangible assets had been converted into money and distributed, the court, in the course of this liquidation proceeding, ascertained that it would be necessary, in order to complete it, to collect of the shareholders of the bank 38.84 per cent. of the par value of their stock, and ordered them to pay this assessment to its receiver accordingly. The general jurisdiction of the Circuit Court was ample to authorize this action. That jurisdiction was not withdrawn or limited by the act of 1876, and its receiver had plenary power under its order to institute and maintain the action at bar to compel the defendant to

pay the amount of the assessment which the court had made upon the stock which he held. The objection to the jurisdiction of the court and of its receiver cannot be sustained.

Another reason why this action ought not to be maintained is pressed upon our attention. It is that it was barred by the limitation of three years prescribed by the Code of Civil Procedure of Kansas, art. 3, § 18, subd. 2. This contention rests upon the argument that the bar of the statute cannot be postponed by the failure of a creditor to avail himself of any means within his power to prosecute or preserve his claim (Bauserman v. Blunt, 147 U. S. 657, 13 Sup. Ct. 466, 37 L. Ed. 316), and that the creditors were aware of the insolvency of the bank, and hence of the liability of its stockholders, and could have commenced their suit to enforce it as early as April 13, 1891, when the bill for the appointment of the receiver was filed. But the answer to this objection is that the suit to administer the affairs of the bank, commenced in 1891, was, like the proceedings of the comptroller in cases within his jurisdiction, a proceeding to ascertain and enforce the liability of the shareholders as well as to administer the tangible assets of the bank, because that ascertainment and enforcement was a part of the liquidation contemplated, so that no time ran against the creditors during the pendency of that proceeding. Under that bill, every creditor who proved his claim became a party to the suit as of the date of the bill, and the subsequent intervening petition of Stone for the ascertainment and enforcement of the liabilities of the shareholders commenced no proceeding which was not already pending, conferred no power and invoked no jurisdiction which the court could not as well have exercised on the original petition and the reports of its receiver. Richmond v. Irons, 121 U. S. 52, 7 Sup. Ct. 788, 30 L. Ed. 864.

The result is that the cause of action which the receiver is now prosecuting in the case before us never accrued until 60 days after February 12, 1900, when the court ascertained the necessity, and ordered the payment of the 38.84 per cent. of the par value of the stock 60 days after that date. There was no time prior to the order of February 12, 1900, when the extent of the liability of the shareholders of this bank was ascertained; no time when it was due. There was no time after April 13, 1891, when the suit in equity to liquidate the affairs of the bank was commenced when any creditor could have maintained a bill to enforce the liability of the shareholders, because the jurisdiction of the court which had already seized the assets and commenced to liquidate the obligations of the bank was exclusive. The result is that the bar of the statute has not arisen, and this action may be maintained under the general rule that, in an action by a receiver to enforce the liability of a shareholder of an insolvent national bank whose affairs are in course of judicial administration in a proper proceeding in a federal court for the purpose of liquidating its debts, the liability of the shareholders of the bank does not become due, does not mature, and the action to collect it does not accrue, until the court decides that it is necessary to collect some part of it, determines the amount, and fixes the time

for its payment. Deweese v. Smith, 106 Fed. 438, 441, 45 C. C. A. 408, 410, 411, and cases there cited.

The judgment below is reversed, and the case is remanded to the Circuit Court for farther proceedings not inconsistent with the views expressed in this opinion.