# WARD v. JOSLIN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 245. Argued April 30, 1902.—Decided May 19, 1902.

As between creditor and stockholder the provision of the Constitution of Kansas that "dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder," applies to indebtedness incurred in the legitimate and contemplated business of the corporation.

Where a judgment has been rendered in Kansas against a corporation of that State, by default, on contracts which the corporation had no power to make, a stockholder when sued by virtue of the constitution and laws of Kansas in that behalf, may insist, in defence, on the invalidity of the contracts.

On the facts found the judgment below is correct and is affirmed.

SEPTEMBER 12, 1888, S. S. Hite and Mary L. Hite executed and delivered to one J. E. Ethell their promissory notes in writing of that date, whereby for value received they promised to pay to the order of Ethell on September 12, 1892, the principal sum named in each, with interest thereon at the rate of seven per cent per annum, payable semi-annually, according to the tenor of eight interest coupons bearing interest and attached to each of the notes; and afterwards and before the maturity of the notes, Ethell endorsed, transferred and deliv-

ered them to Ward. At that time the Western Investment Loan and Trust Company, a corporation of Kansas, guaranteed in writing the payment of the notes in the following words endorsed on each: "For a valuable consideration the Western Investment Loan and Trust Company hereby guarantees payment of the within obligation, both principal and interest, at maturity." The notes not having been satisfied, Ward brought suit against the Western Investment Loan and Trust Company on the guaranties in the District Court of Smith County, Kansas, and recovered judgment against the company by default; and execution having been issued on the judgment and returned *nulla bona*, Ward brought this action December 15, 1896, against Edward Joslin in the Circuit Court of the United States for the District of New Hampshire to recover of him as a stockholder in said Western Investment Loan and Trust Company, an amount equal to the amount of stock owned by him in said corporation.

The declaration contained two counts. The first alleged the recovery of judgment; the issue of execution and return *nulla bona*; insolvency of the company July 1, 1894, and its want of "property or assets of any kind or value whatever;" that defendant was the owner of one hundred shares of stock; and that, "by reason of the premises and by virtue of the constitution and statutes of the State of Kansas, in such case made and provided, a right of action hath accrued" to plaintiff.

The second count alleged that the loan and trust company "was a corporation chartered and organized for the purpose of transacting a general investment loan and trust business, and under its charter, as it was authorized to do, endorsed and guaranteed the payment of notes and obligations negotiated by it;" that these notes and coupons "were in fact negotiated by said corporation, the Western Investment Loan and Trust Company, in the regular course of its business;" that judgment was recovered and execution returned *nulla bona*; "and that by reason of the premises and by virtue of the constitution, statutes and laws of the State of Kansas in such case made and provided," the right of action had accrued.

Among other special matters set up in defence was " that the claim against the Western Investment Loan and Trust Company, upon which a judgment in favor of the plaintiff against said company was founded, was not a debt due from or debt of said corporation, for which the defendant as a stockholder in said corporation was liable under the constitution and laws of Kansas." And that the Western Investment Loan and Trust Company " never had any authority to endorse the said promissory notes and obligations in the second count in plaintiff's declaration described, or to guarantee the payment of said notes and obligations."

A jury was waived and the cause submitted to the Circuit Court for trial, and the court made and filed its findings of fact and conclusions of law.

After finding that the defendant was a stockholder of one hundred shares of the par value of fifty dollars each in the company in question, the findings thus continued :

" I find as matter of fact, upon the evidence contained in the record, and upon the arguments, that Ward's claim against the trust company was upon a guaranty, given upon a valuable consideration, of the payment of certain promissory notes from one third party to another; and was not a guaranty of the payment of securities negotiated by the company.

"I find that the plaintiff brought an action at law in the District Court of Smith County, in the State of Kansas, against the trust company, on December 23, 1892, on these guaranties, by a writ served upon the president of said corporation, and on March, 1893, recovered judgment thereon against the company for $9787.50, with interest at 12 per cent; and, as shown in the record, on December 11, 1893, $4924.75 was paid thereon, and on September 14, 1896, an execution issued for the balance, and was returned wholly unsatisfied as shown by the officer's return printed in the record.

" I also find that the trust company was not a railway, religious or charitable corporation, and the business which the corporation was authorized to do was ' to buy and sell personal property, including stocks, bonds, bills, notes, real and

chattel mortgages, and choses in action of every kind and description, and to transact the business of a loan and trust company;' that some time after the organization of the company, and before the defendant became a stockholder, the directors thereof resolved ' that the president and secretary of the company be, and they hereby are, authorized to guarantee the payment of all securities negotiated by the company by endorsing upon any such security one of the following forms of a guaranty;' and the resolution of the corporation and the forms of guaranties printed in the record are referred to and made a part of the findings.

" Ascertaining the relations of the parties under the contract, which resulted from the Kansas constitution and the statutes and the defendant's ownership of stock, I find, so far as it is a question of fact, that the dues to be secured by the superadded stockholders' liability were such as were within the reasonable and proper scope of the business as contemplated by the parties, and that a guaranty of this character was not intended by the defendant stockholder, and was not contemplated by the Kansas constitution as a due or a debt within such scope. I also find, so far as it is a fact, that it was not within the scope of the resolution which assumed to authorize the president and secretary to guarantee securities negotiated by the company, and there is no evidence that the defendant stockholder had knowledge that the company was assuming, through its president and secretary, to guarantee the payment of claims not negotiated by itself; and there being no evidence of notice, I find, as a matter of fact, that he was not aware of it.

" I also make a general finding for the defendant."

The rulings of law were stated in the opinion of the court set forth in the record, and reported 100 Fed. Rep. 676.

The Circuit Court ruled that " the relations of the parties are contractual, and the term ' dues,' in the Kansas constitution ought to be accepted as applying only to claims resulting from the legitimate and contemplated business of the corporation or company, such as arise in respect to transactions within the reasonable scope of the business contemplated ; and, as between the creditor and stockholder, they should not be extended

to claims which arise from the transaction of unauthorized business."

That " while under paragraph 1192 of the General Statutes of Kansas providing a remedy, a judgment against the corporation may be accepted, under proper limitations, as conclusive, in a proceeding against the stockholder as to the amount and liability of the company upon claims in respect to transactions within the contemplation of the constitution and of the parties to the contract, it should not be accepted as conclusive upon the question of the nature and character of the claims, for the reason that paragraph 1192 is only intended to give a remedy to the creditor in respect to the kind of claims contemplated by the constitution. The judgment on this ground is accepted as conclusive, because it relates to a corporate affair, and because the stockholders' interests are supposed to be represented by the officers of the bank in respect to affairs within the scope of its contemplated, legitimate and authorized transactions ;" but the stockholder ought not to be concluded " as to the question whether the foundation and nature of the claim were within the fair intendment of the constitutional provision and the contract between the parties, upon the ground of representation, for the reason that such a question is not one which, in the natural and usual course of litigation between the bank and the creditor, would be presented or adjudicated."

That " the contract, under the constitution, is between the creditor and the stockholder, and the bank, in a proceeding against it by the creditor to which the stockholder was not a party, would neither be called upon, nor be expected or allowed to present such a question for adjudication."

That " the amount of the bank's indebtedness, or its liability, on a question of this kind, could and would be put in issue in a suit between the creditor and the corporation ; but whether such a due is within the scope of the contract between the creditor and the stockholder under the constitution would not and could not be put in issue in a suit between a creditor and the bank to which the stockholder is not a party."

That " in the original case against the bank by the creditor, the question as to the character of the claim, whether it was one

contemplated by the contract between the creditor and the stockholder, was neither presented nor litigated, nor was it in a situation to be presented or litigated; while in the case now under consideration the question is not whether the claim was an indebtedness or a due for which the bank was liable, which question was litigated and concluded by the judgment, but a question whether it was the kind of a debt or due which the statutory contract between the creditor and stockholder covered or contemplated. This precise question, as has been said, was not presented, could not have been presented, in that case, and therefore is not concluded." That this judgment came within " an exception to the general rule that a judgment against the corporation is conclusive."

Plaintiff moved for a new trial, which was denied, and judgment entered for defendant. The case was taken on error to the United States Circuit Court of Appeals for the First Circuit and the judgment affirmed. 105 Fed. Rep. 224. This writ of certiorari was then issued.

*Mr. William Reed Bigelow* for petitioner. *Mr. E. L. Waterman* and *Mr. Park B. Pulsifer* were on his brief.

*Mr. J. S. H. Frink* for respondents.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

When a case is tried by the court without a jury, its findings on questions of fact are conclusive, although open to the contention that there was no evidence on which they could be based. The question remains whether or not the facts found are sufficient to support the judgment, and rulings to which exceptions are duly preserved may be reviewed.

Plaintiff excepted to the refusal of the court to rule that upon all the evidence plaintiff was entitled to recover as matter of law, and also to the refusal to make other rulings requested, and to the rulings made. The correctness of these rulings was questioned in fifteen errors assigned in the Circuit Court of Appeals, but they need not be recapitulated.

The Circuit Court found as facts that the guaranties on which plaintiff's judgment in the state court was based were not guaranties of the payment of securities negotiated by the company; that the business which the corporation was authorized to do was "to buy and sell personal property, including stocks, bonds, bills, notes, real and chattel mortgages, and choses in action of every kind and description, and to transact the business of a loan and trust company;" that the guaranty of these notes was not within the reasonable and proper scope of the business of the company; and that defendant had no notice that the company was assuming to guarantee the payment of claims not negotiated by itself. The court referred to a resolution of the board of directors authorizing the guaranty of securities negotiated by the company, and found this guaranty not within its scope.

This corporation was organized in 1888 under the general laws of Kansas, authorizing the creation of loan and trust companies, by voluntary association as prescribed, with the powers, among others, "to make by-laws, not inconsistent with existing laws, for the management of its property, the regulation of its affairs, and for the transfer of its stock;" and "to enter into any obligation or contract essential to the transaction of its ordinary affairs." The charter of each corporation was required to set forth "the purpose for which it is formed;" and the statute provided that: "No corporation created under the provisions of this act, shall employ its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever, than to accomplish the legitimate objects of its creation." Comp. Laws, Kan. 1885, p. 210, c. 23, §§ 5, 6, 11, 26.

The purposes for which the corporation was formed were set forth in its charter, and were as found by the Circuit Court. The by-laws provided for a loan committee with power "to discount or purchase bonds, bills, notes and other evidences of debt," but did not embrace the power to guarantee. As before stated, the Circuit Court found that these guaranties were not "within the reasonable and proper scope of the business, as contemplated by the parties."

The purview of the words "loan and trust" does not appear

to have been defined by statute or decision in Kansas, but the leclaration alleged that this company was organized "for the purpose of transacting a general investment loan and trust business, buying and selling commercial paper, obligations and securities," and it must be assumed that the general rule is applicable that such companies have no implied power to lend their credit, or to bind themselves by accommodation endorsements. They may guarantee paper owned by them, or paper which they negotiate in due course of business and the proceeds of which they receive, but the naked power to guarantee the paper of one third party to another is not incidental to the powers ordinarily exercised by them. The power as exercised here was certainly not "essential to the transaction of its ordinary affairs," nor within "the legitimate objects of its creation." And so far as the question might be resolved by the usage in Kansas, the findings were adverse to plaintiff.

In *Commercial Bank* v. *Cheshire Provident Institution*, 59 Kan. 361, a judgment against a bank on a guaranty, where the record did not contain any of the evidence, and there was a general finding for plaintiff, was sustained. The court said that it must be presumed that the guaranty "was executed for a valuable consideration, by the duly authorized officers of the bank, and in due course of business;" and that while "it is true that, in this case, the paper itself does not indicate that the Commercial Bank ever owned it, nevertheless it may have received the proceeds and the guaranty may have been made strictly in the interest of the bank." But the findings in this case take it out of the range of that decision and forbid resort to presumption to make out validity.

We are of opinion that, upon the facts found, the guaranties were given without authority.

The second section of article twelve of the constitution of Kansas provides as follows: "Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes."

In *Woodworth* v. *Bowles,* 61 Kan. 569, it was held that this constitutional provision was not self-executing, but required legislative action to give it effect.

Section thirty-two of chapter twenty-three of the Compiled Laws of Kansas of 1885 provided that when an execution had been issued against a corporation, and property could not be found on which to levy it, then "execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; . . . or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

Section 44 : " If any corporation, created under this or any general statute of this State, except railway or charitable or religious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit; . . ." Section 45 : "If any stockholder pay more than his due proportion of any debt of the corporation, he may compel contribution from the other stockholders by action." Section 46 : " No stockholder shall be liable to pay debts of the corporation, beyond the amount due on his stock, and an additional amount equal to the stock owned by him." These sections were all carried forward into the Complied Laws of 1889, with the same chapter and numbers, but that compilation also gives a general number, and the general number of section 32 is 1192. There was no compilation from 1889 to 1897. Sections 32, 44, 45 and 46 reappear in sections 49, 50, 51 and 53 of chapter 66 of the General Statutes of 1897.

The word " dues " thus appears to have been regarded as equivalent to debts or that which is owing. Mr. Justice Story in *United States* v. *Bank,* 6 Pet. 29, 36, said, in construing the statute there referred to : " The whole difficulty arises from the different senses in which the word ' due ' is used. It is sometimes used to express the mere state of indebtment, and then is an equivalent to owed or owing. And it is sometimes used to express the fact that the debt has become payable."

In *Whitman* v. *Oxford National Bank*, 176 U. S. 559, it was said that: "The word 'dues' is one of general significance, which includes all contractual obligations." Can an obligation which a corporation had no right to incur be a contractual obligation and the basis of "dues," as that word is used in the state constitution? We do not think so. It appears to us that it was not intended by that instrument to impose individual liability on stockholders in respect of risks which they had not undertaken.

One of the grounds on which the doctrine of *ultra vires* rests, is that the interest of the stockholders ought not to be subjected to such risks. Rights of stockholders must be considered as well as those of creditors, and they should not be held directly liable unless such liability was within their contract in legal contemplation.

The rule in this court is that a contract made by a corporation beyond the scope of its powers, expressed or implied, cannot be enforced, or rendered enforcible, by the application of the principle of estoppel. The rule in Kansas seems to be that when the contract has been executed and the corporation has received the benefits of it, the corporation is estopped from questioning its validity, and so in respect of evidences of indebtedness purchased before maturity in good faith and without notice. *Atchison, Topeka & Santa Fé Railroad Company* v. *Fletcher*, 35 Kan. 236; *Sherman Center Town Company* v. *Morris*, 43 Kan. 282; *Alexandria, Arcadia & Fort Smith Railroad Company* v. *Johnson*, 58 Kan. 175. But we are not persuaded that if the defence of *ultra vires* had been interposed in the action against this company, and the facts had been found to be as they have been found here, the defence would not have been sustained in the courts of Kansas. If, however, under the state decisions, the corporation would be held estopped from denying the liability, it does not follow that the stockholders must therefore be held liable, if the obligation was in fact incurred without authority. In other words, alleged liabilities incurred without authority, and which do not come within the meaning of the word "dues," as used in the state constitution, cannot be properly treated as brought within the scope of that

word, simply because the corporation may be so situated as to be estopped from denying their validity.

Whether in this case the corporation would have been held estopped if it had made the defence of *ultra vires*, it did not make it, and judgment went against it. We have held such judgments conclusive in proceedings under the Kansas constitution. *National Bank* v. *Farnham*, 176 U. S. 640. But we did not there hold that it was not open for a stockholder to show that the judgment was not enforcible against him when rendered against the corporation on a contract beyond its power to make. It must be remembered that in the case before us the right of action accrued, and the action was accordingly averred to have been brought, " by virtue of the constitution and the statutes of the State of Kansas in such case made and provided." We think it was not error to permit the stockholder to go behind the judgment so far as to show, or, at all events, to insist, for the judgment record introduced below disclosed the invalidity of the guaranties, that he was not liable under that constitution and those laws.

In *Schrader* v. *Manufacturing Company*, 133 U. S. 67, it was ruled that although the individual liability of the stockholders of a national bank, as imposed by and expressed in the statute, was for all its contracts, debts and engagements, " that must be restricted in its meaning to such contracts, debts and engagements as have been duly contracted in the ordinary course of its business ; " and that a judgment recovered against the bank in a suit commenced some years after it went into liquidation " was not binding on the stockholders in the sense that it could not be reëxamined."

In *Brownsville* v. *Loague*, 129 U. S. 493, it was held that " if a petitioner for a writ of mandamus to compel the levy of a tax to pay a debt evidenced by a judgment recovered on coupons of municipal bonds is obliged to go behind the judgment in order to obtain his remedy, and it appears that the bonds were void, and that the municipality was without power to tax to pay them, the principle of *res judicata* does not apply upon the question of issuing the writ." The petition in that case set up the judgment and averred that " petitioner's only

remedy to enforce the collection of his judgments is that awarded by the act authorizing the issue of the bonds from which the coupons were detached upon which said judgments were obtained." And we held that as the relator was compelled to go behind the judgments as money judgments merely, " to obtain the remedy pertaining to the bonds, the court cannot decline to take cognizance of the fact that the bonds are utterly void and that no such remedy exists."

As then the provision of the constitution of the State of Kansas, if properly construed, imposes the liability in question only in respect of corporate indebtedness lawfully incurred, that is to say, in respect of dues resulting in regular course of business and in the exercise of powers possessed, plaintiff cannot recover in this action by virtue of the constitution and laws of the State, on the facts found, and the judgment must be affirmed.

As to the denial of the motion for new trial it is not within our province to interfere with the discretion of the Circuit Court.

*Judgment affirmed.*

Mr. Justice Gray did not hear the argument or take any part in the decision.