### In re BANKERS' TRUST CO.

District Court, N. D. Georgia, Atlanta Division.
August 4, 1928.

No. 12046.

1. **Banks and banking** ⊂⊃315(1)—**Statute authorizing trust companies to make contracts held to authorize only contracts for proper corporate purposes (Civ. Code Ga. 1910, § 2817, as amended by Acts 1917, p. 56).**

Civ. Code Ga. 1910, § 2817, as amended by Acts 1917, p. 56, authorizing trust company organized thereunder, among other things, to make contracts, *held* not to authorize all sorts of contracts, being no more than general power to contract for proper corporate purposes, in view of many special sorts of contracts subsequently specified, some with limitations and conditions.

2. **Banks and banking** ⊂⊃315(1)—**Trust company's accommodation indorsement and guaranty of paper of banks for which it acted as financial agent held ultra vires and void (Civ. Code Ga. 1910, § 2817, as amended by Acts 1917, p. 56).**

Where trust company, in order to rediscount paper of banks for which it acted as financial

agent and to procure credit for them, guaranteed their paper by indorsement for no consideration moving to it other than the contracted salaries paid by banks, *held*, that such transactions were void and ultra vires, under Civ. Code Ga. 1910, § 2817, as amended by Acts 1917, p. 56, prescribing powers of such corporations, in absence of special circumstances.

3. Banks and banking ⚖️315(1)—Trust company's ultra vires accommodation contracts of guaranty and indorsement held not enforceable on theory of estoppel.

Where trust company's indorsement and guaranty of paper of other banks for which it acted as financial agent was ultra vires, principle of estoppel could not be invoked to hold it liable to one acting in reliance thereon, especially where party seeking to enforce such claim had knowledge of its lack of power.

In Bankruptcy. In the matter of the Bankers' Trust Company, bankrupt. On review of referee's denial of claims. Affirmed.

Bryan & Middlebrooks, W. Colquitt Carter, Robert T. Jones, Jr., all of Atlanta, Ga., and Hall, Grice & Bloch and P. O. Holliday, all of Macon, Ga., for creditors.

Carl N. Davie, of Atlanta, Ga., and Orville A. Park, of Macon, Ga., for banking department, state of Georgia.

SIBLEY, District Judge. The Bankers' Trust Company acted as financial agent for numerous banks, under written contracts with them. In order to rediscount the paper of these banks, and to procure original credit for them, it made a practice of guaranteeing, generally by a separate instrument, but sometimes by an indorsement of the notes, the paper put out by these banks. In one instance a bank was required to give a bond for the deposit of public money, a fidelity company guaranteeing the deposit for the bank. The Bankers' Trust Company on its part guaranteed the bond company against loss.

The banks becoming insolvent, and the Bankers' Trust Company being in bankruptcy, various claims are sought to be proved against the bankrupt estate on account of such indorsement contracts and guaranties. In no case does it appear that the Bankers' Trust Company was paid anything directly for the use of its name. It got its compensation only by the contracted salaries paid by the banks which it served.

The only question is whether certain indorsements and written guaranties are binding upon the bankrupt corporation, or are ultra vires and void, though the parties holding them have fully performed their obligations in the premises. In no instance did the Bankers' Trust Company receive the consideration which was paid by the holder of the indorsement or guaranty. While the holder paid out money or assumed liability to third parties on the faith thereof, so that there was a sufficient consideration to support the contracts, no direct benefit accrued to the Bankers' Trust Company. Consequently the transactions were accommodation indorsements or suretyships and guaranties for considerations moving to another. [1] The contention is that such contracts are entirely without the powers of the corporation and not binding on its stockholders or legitimate creditors. The Bankers' Trust Company was organized as a trust company under the laws of the state of Georgia. Code, § 2817, as amended by Acts 1917, p. 56, states under 14 heads the powers of such corporations. Pertinent parts are quoted:

"1. To make contracts." This power cannot be held to authorize all sorts of contracts, because many special sorts are named afterwards, some with limitations and conditions. It is no more than the general power to contract for the proper corporate purposes elsewhere set forth.

"3. To act as the fiscal or transfer agent of any * * * corporation, and in such capacity to receive and disburse money and transfer, register and countersign certificates of stock, bonds, and other evidences of indebtedness." Most of the transactions in question arose out of acting as fiscal agent for certain banks under written contracts for such services. Neither these contracts nor the quoted charter power authorizing them makes any mention of guaranteeing the paper of the principal, or in any manner lending it the trust company's credit.

"11. To purchase, invest in and sell, stock, bills of exchange, bonds and mortgages and other securities, and when moneys or securities are borrowed or received on deposit, or for investment, the bonds or obligations of the Company may be given therefor, but nothing herein contained shall be construed as giving the right to issue bills to circulate as money." None of the transactions in question were such as are here permitted, but the main transaction in each case was not one of the Bankers' Trust Company on its own account, but in behalf of some one else; the engagement of the trust company being evidently or expressly collateral and secondary. The power to guarantee is twice given in subsection 13, as to bonds and notes secured by deed to real estate in Georgia, and in subsection 14 as to the validity of real estate titles, on condition in each case that a large guaranty fund be specially

deposited under the direction of the state treasurer.

[2] The naming and limiting of these special cases of guaranty as authorized would in itself indicate a purpose to forbid any other form of pledging the corporation's assets for the benefit of others, even though for a consideration. This is the function of fidelity and guaranty companies, specially authorized to do such business, and is not considered as among the powers of other corporations. Thus it is generally held that an accommodation indorsement, there being no bona fide holder involved, does not bind an ordinary commercial corporation, though for the benefit of its principal stockholder. Cook v. American Tubing Co., 28 R. I. 41, 65 A. 641, and note, 9 L. R. A. (N. S.) 193.

So a contract of guaranty of the debt of another, though in expectation of indirect benefits actually realized, and though executed on his part by the holder of the guaranty, does not bind the corporation giving it. Western Maryland R. R. Co. v. Blue Ridge Hotel Co., 102 Md. 307, 62 A. 351, and note, 2 L. R. A. (N. S.) 887, 111 Am. St. Rep. 362. With respect to a loan and trust company similar to this, which had no express power to make guaranties, in the case of Ward v. Joslin, 186 U. S. 142, at page 149, 22 S. Ct. 807, 809 (46 L. Ed. 1093) it is said: "It must be assumed that the general rule is applicable that such companies have no implied power to lend their credit, or to bind themselves by accommodation indorsements. They may guarantee paper owned by them, or paper which they negotiate in due course of business, and the proceeds of which they receive, but the naked power to guarantee the paper of one third party to another is not incidental to the powers ordinarily exercised by them." The business of pledging a corporation's assets for another's credit, though for a consideration paid, is so dangerous a one, and requires such organization and officers, that it may well need an express grant of power to embark the capital in it.

It is recognized that a corporation may carry on its proper business by means of subdivisions or auxiliary corporations or enterprises, and lend its credit to them, just as it might have used its own funds in such business to advance it, but the banks which the Bankers' Trust Company dealt for were not carrying on its business at all. The Bankers' Trust Company had stock in some of them. No doubt to protect this ownership, if there were an emergency requiring it, the corporation might have advanced its money or its credit, to relieve the emergency. But these transactions seem all, to have been in the ordinary course of business as fiscal agent, representing these banks, and not for the purpose of saving an investment of the trust company. No special circumstances are shown which would make the transactions other than what they appear on their face to be.

There is no question of innocent holder involved. Even as to the accommodation indorsements, it is evident from the face of the paper that the Bankers' Trust Company is lending its credit while another gets the consideration of the transaction. Compare Cook v. American Tubing Co., supra. It is known by the holder to be a contract to misapply the corporation's assets, unless its charter authorizes such business, and since the powers of the trust company are fixed by public law, all are bound to know what they are. Pearce v. Railroad Co., 21 How. 441, 16 L. Ed. 184.

[3] But it is urged that, since the Bankers' Trust Company by its agreement induced others to assume obligations, or part with money, and since those others have fully performed their agreements, the Bankers' Trust Company is estopped from urging its want of power. The propriety and duty of a corporation to repudiate an ultra vires engagement, so long as it is fully executory, has often been stated. So has the reluctance of the courts to entertain the defense after full execution by the other party. But it is believed that, where the contract is wholly without the corporate powers, and especially when known so to be by the other party, the contract itself cannot be effected by estoppel. In Louisville, New Albany & Chicago Railway Co. v. Louisville Trust Co., 174 U. S. 552, at page 567, 19 S. Ct. 817, 823 (43 L. Ed. 1081), it is said: "A railroad corporation, unless authorized by its act of incorporation or by other statutes to do so, has no power to guarantee the bonds of another corporation; and such a guaranty, or any contract to give one, if not authorized by statute, is beyond the scope of the powers of the corporation, and strictly ultra vires, unlawful, and void, and incapable of being made good by ratification or estoppel." Cases are cited as authority for the statement which involve corporations other than railroads.

It was said in Ward v. Joslin, supra, 186 U. S. at page 151 (22 S. Ct. 810): "The rule in this court is that a contract made by a corporation beyond the scope of its powers, expressed or implied, cannot be enforced, or

rendered enforceable, by the application of the principle of estoppel." According to the federal rule, the court will only look to see if the disappointed party is entitled to any relief outside of the contract, as by an action to recover what the repudiating party received by virtue of the repudiated contract. Central Transp. Co. v. Pullman's Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55, at end of opinion; Pittsburgh Ry. Co. v. Keokuk Bridge Co., 131 U. S. 371, 9 S. Ct. 770, 33 L. Ed. 157.

As the assets of the Bankers' Trust Company do not appear to have been in any manner enriched as the direct result of any of the transactions in question, there is no refund due by it. Western Maryland R. R. Co. v. Blue Ridge Hotel Co., supra.

It follows that the judgment of the referee in each case should be affirmed.