The issue before the court on this rehearing is as to whether the Middlesex Title Guarantee and Trust Company (hereinafter called the "Middlesex Company") had the right and power to guarantee to those who purchased from it real estate, bonds and mortgages, or certificates of participation in such bonds and mortgages, the payment of the principal and interest *Page 370 
thereof, or whether such guarantees actually made by it wereultra vires and were and are therefore absolutely void.
The Middlesex Company was incorporated in January, 1907, under the provisions of the "act concerning trust companies," (Revision of 1899). Its business consisted chiefly of five main divisions: (1) guaranteeing titles to real estate; (2) becoming surety on fidelity bonds; (3) acting as trustee, corporate and fiscal agent, executor, and in other fiduciary capacities; (4) receiving moneys of depositors subject to check and purchasing commercial paper (understood by the ordinary layman as banking business); and (5) purchasing or investing in real estate bonds and mortgages and selling such bonds and mortgages and certificates of participation in such bonds and mortgages, with its own direct obligation to purchaser for the payment of principal and interest.
Recently it became insolvent and on February 14th, 1933, its affairs were taken over by the commissioner of banking and insurance, under the provisions of the amendment of 1931 (P.L.1931 p. 641), and thereafter the commissioner filed his petition in this court asking instructions as to divers questions arising in his administration of this trust estate in his charge for liquidation, and bringing all parties in interest before the court, either personally or by class representation.
Among the questions so presented was the one now sub judice, which was at that time determined in favor of the power of the corporation and the validity of the guarantees; a determination at that time concurred in by the majority of counsel interested — including counsel for the commissioner. Thereafter, because of recent and subsequent determinations in the courts of other states apparently in conflict with the determination of this court, a rehearing on the point was asked and granted. The conclusion heretofore reached, however, remains unchanged thereby, and is reaffirmed.
Among the powers conferred by the statute (P.L. 1899 p. 450) (and included in its certificate of incorporation), are the general powers conferred by the General Corporation act of 1896, so far as they are not inconsistent with the provisions of the Trust Company act (section 6), and certain special powers, including (section 6, subsection 10) the power *Page 371 
"To purchase, invest in, and sell * * * bonds and mortgages and other securities; and when moneys or securities for moneys are borrowed or received on deposit, or for investment, the bonds or obligations of the company may be given therefor, * * *."
The power to guarantee the bonds and mortgages which it has the right to sell seems clearly an appropriate and convenient power — and one reasonably requisite for the effectual exercise of the right to sell such bonds and mortgages. It was so held by the supreme court in 1911, in McCauley v. Ridgewood Trust Co.,81 N.J. Law 86; 79 Atl. Rep. 327, on an issue precisely similar to the present; and that determination has continued to be the law of this state, and to be acted upon as such by various trust companies, by the members of the bar, and by the public generally (who have invested enormous sums in the aggregate in these securities), for more than twenty years thereafter — which would in itself alone be a cogent reason for a similar determination here.
See, also, Jesselsohn v. Boorstein, 111 N.J. Eq. 310;162 Atl. Rep. 254.
Moreover, the statute expressly gives the power to give the obligation of the company for money borrowed, or received on deposit or for investment. To every depositor or investor who turns over money to the company, it has the right to give its own direct obligation for the repayment thereof with interest. It is not perceived that there is any essential difference, from the standpoint of the question of ultra vires, between the giving by the company of its own direct bond or promise to pay, with the real estate bond and mortgage as security therefor, and the turning over by the company of the bond and mortgage, plus its own obligation or promise to pay, if the mortgagor defaulted.
Counsel argues that the issuance of these guarantees is the doing of the business of an insurance company — insuring payment of bonds and mortgages — and that that can validly be done only by a company organized under the Insurance Company act. It is sufficient to point out that the Middlesex Company was not acting as a general insurer of payment of bonds and mortgages; its guarantees were solely of the *Page 372 
bonds and mortgages which it owned and sold. If this be deemed insurance, it is nevertheless authorized as already pointed out.
Reliance is also placed on several cases from other states; (a)Rcichert v. Metropolitan Trust Co., 266 Mich. 123. The Michigan statute as to trust companies differs from the New Jersey statute; but even if this case be deemed contrary to the present holding, it cannot be concurred in by this court. (b) Inre Bankers Trust Co., 27 Fed. Rep. 2d 912. The Georgia statute involved in this case is similar to our own, but the guarantees were made without consideration and simply for the accommodation of other parties. In such circumstances they would probably be held invalid in this state; but the Middlesex Company's guarantees were not accommodation guarantees. They were in consideration of the purchase by the investor of the bonds and mortgages, and in further consideration of annual payment to the Middlesex Company of one-half of one per cent. of the principal. (c) Ward v. Joslin, 186 U.S. 142. In this case the guarantee was not a guarantee of the payment of securities negotiated by the company. In the case of the Middlesex Company the contrary is true. The supreme court in Ward v. Joslin, says that the company "may guarantee paper owned by them or paper which they negotiated in due course of business and the proceeds of which they receive." No difference in principle can be perceived between the sale of these mortgages plus the vendor's guarantee, and the sale of bills or notes with the trust company's guarantee by endorsement or the sale of real estate (owned by it) by deed of general warranty. The power of the trust company to do either of these latter things will scarcely be questioned.
It need scarcely be added that the power to sell, and guarantee, a whole bond and mortgage, implies also the power to sell and guarantee a bond and mortgage in fractional interests. The validity of the guarantee of the participation certificates is equally established.
It is further urged that even if the company be deemed authorized to guarantee the bonds and mortgages sold by it, *Page 373 
nevertheless it had no right to involve in such transactions more than the amount of its capital and surplus — by analogy with a limitation in the later Insurance act. This argument is deemed unsound. By express authority, the statute authorizes the bonds or obligations of the company to be given "for moneys borrowed, or received on deposit or for investment."
Decree may be entered accordingly.